[Crim. No. 55. Third Appellate District.—December 13, 1907.]

THE PEOPLE, Respondent, v. HARRY MALTAIS, Appellant.

CRIMINAL LAW—GRAND LARCENY—SUPPORT OF VERDICT.—*Held,* upon review of the evidence supporting a verdict of guilty of grand larceny against the appellant, that though the evidence is chiefly circumstantial, and not strongly inculpatory, it cannot be said that it was wholly insufficient to justify the verdict of guilty.

ID.—EVIDENCE—OBJECTION TO QUESTION NOT ANSWERED—HARMLESS RULING.—The overruling of an objection to a question asked by the defendant's counsel of a witness for the prosecution on cross-examination is harmless, if the question was not answered.

APPEAL from a judgment of the Superior Court of Siskiyou County, and from an order denying a new trial. J. S. Beard, Judge.

The facts are stated in the opinion of the court.

B. K. Collier, for Appellant.

U. S. Webb, Attorney General, for Respondent.

CHIPMAN, P. J.—Defendant was accused by information of having, on January 5, 1907, at the county of Siskiyou, unlawfully and feloniously stolen $80, lawful money of the United States, then and there the personal property of one J. Root, contrary, etc. He was found guilty of grand larceny and sentenced to four years' imprisonment in the state prison at San Quentin.

Defendant appeals from the judgment and from the order denying his motion for a new trial. He urges as grounds of appeal: 1. That the evidence is insufficient, generally, to sustain the verdict; 2. That the evidence is insufficient particularly, because the venue was not proven; 3. That the court erred in overruling the objection made to a certain question asked by the prosecution of witness Ladue on cross-examination.

There is evidence tending to establish the following facts: Root, the complaining witness, came to the town of Dunsmuir from a lumber camp where he had been working, about midnight, or later, of January 4, 1905; he had come by way of Castella, where he had been drinking intoxicants to some extent. Arriving at Dunsmuir he went to the Palm saloon, which was a rooming-house as well as a saloon, and resumed his drinking and remained there at times most of the night. He went across the street during the night to the Weed restaurant and had supper and there met defendant, whom he had not before known or seen. He returned to the Palm saloon and defendant followed him. Root treated defendant and others several times and finally toward the morning of January 5th asked for a room. He brought with him something over $100 in twenty-dollar gold pieces and some silver. When treating in the saloon he displayed his purse and its contents in a way to apprise defendant of what money he had. When he asked for a room defendant offered to show him to it and did so, taking the key and unlocking the door. As Root was about starting to his room he again made known his possession of the money in the hearing of defendant. On reaching the room defendant returned to

the saloon and got a couple of drinks and took them to the room, where he and Root drank them. Root had meanwhile undressed and got in bed, placing his trousers under the pillow, leaving their legs hanging out. After drinking defendant left the room and Root went to sleep, not locking the door. He arose about 11 o'clock of that forenoon and went down to the saloon, called for a drink and upon getting his purse discovered that all the twenty-dollar gold pieces were gone. He found in his coat pocket a ten-dollar bill which had been given him in part as change for a twenty-dollar gold piece during his drinking carousal and some small silver. There was evidence that he had at least four twenty-dollar pieces when he went to bed. Some time near noon on January 5th defendant deposited in the Dunsmuir State Bank four twenty-dollar gold pieces and it was the only time he had ever deposited any money there or transacted any business with the bank. At the time he remarked to the cashier, "You won't say anything about this on the outside, will you?" There was evidence that defendant was working in the Weed restaurant at $1.25 per day and board, and that he had been seen previously by persons who knew him and that he appeared to have no money except some small change. He cashed his certificate of deposit at the Weed Hotel on January 7th. Mr. Weed testified that he had known defendant as Moltin and he had so signed his name, and Weed called his attention to the name in the certificate as Maltais, to which defendant replied that it was a mistake though he had so signed his name at the bank. When Root started to go to his room defendant said he knew about the rooms and would show him where to go, and there was evidence tending to show that defendant had never roomed there.

Defendant introduced some testimony tending to show that about Christmas he had one or two twenty-dollar pieces, part of which he spent in saloons about that time, and that on December 31st, defendant had drawn a chance at a raffle calling for $1.25, but he "said he didn't have the money; said he would pay for it that evening. He was working at the Weed lunch counter then. He came back that evening and paid it."

Defendant testified that when he came to Dunsmuir he had about $100, part of which he spent at saloons, but that the money deposited by him was his own which he had brought with him to that town. He explained that he deposited the money "so as not to gamble it away." He explained that he told the cashier not to mention the deposit because "parties would borrow it" if they knew he had it. He also testified: "I never before that time made a deposit of money in Dunsmuir; I never had enough at a time when I was there before to make a deposit." He had arrived at Dunsmuir with this and other money, amounting to over $100, according to his testimony, on December 22d, but he did not explain why he had not deposited the money before the morning of January 5th.

It is not necessary to further notice the testimony. It is chiefly circumstantial and not strongly inculpatory, but we cannot say that it was wholly insufficient to justify the verdict of guilty. (*People* v. *Wong Chong Suey,* 110 Cal. 117, [42 Pac. 420].)

The venue was distinctly proved. The testimony upon the point was doubtless overlooked by defendant's attorney in preparing his brief.

A witness had testified to defendant's having two twenty-dollar gold pieces when he came into witness' saloon; that he had spent five or six dollars there at that time. On cross-examination he was asked: "And he may have spent that much or more in every saloon in town that day, so far as you know?" The record shows that while the court overruled defendant's objection to the question, the witness made no answer.

The judgment and order are affirmed.

Burnett, J., and Hart, J., concurred.